**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

TERESA DEVORE,

        Plaintiff,

vs.                                          Case No. 3:09-cv-690-J-32HTS

HOWMEDICA OSTEONICS CORPORATION,
a New Jersey corporation d/b/a
STRYKER ORTHOPAEDICS;
ORTHOPEDIC SOLUTIONS, INC., d/b/a
STRYKER SOUTH FLORIDA AGENCY

        Defendants.

## ORDER

This case is before the Court on plaintiff Teresa Devore's Motion to Remand for lack of complete diversity and insufficient amount in controversy. (Doc. 4). Defendants Howmedica Osteonics Corporation d/b/a Stryker Orthopaedics ("HOC") and Orthopedic Solutions, Inc. d/b/a Stryker South Florida Agency ("Orthopedic Solutions") oppose remand on the grounds that Devore has both understated her damages demand and fraudulently joined Orthopedic Solutions for the purpose of circumventing removal. (Doc. 17).

### I.    **Background**

On January 29, 2009, Devore, a Florida citizen, filed suit in state court against HOC, a New Jersey corporation with its principal place of business in New Jersey, and Orthopedic Solutions, a Florida corporation with its principal place of business in Florida. (Doc. 1 ¶¶ 4, 9, 10). HOC is a manufacturer of hip prostheses, including the "Trident Ceramic Acetabular System" ("Stryker Trident"). (Doc. 2 ¶ 4). Orthopedic Solutions is a distributor of HOC

products within the territory of South Florida. (Doc. 17 at 4). It does not distribute HOC products in North Florida. Id. at 11.

In her complaint, Devore alleges that on December 14, 2004, a Styker Strident hip prosthesis manufactured by HOC was implanted in Devore's right hip. (Doc. 2 ¶ 17,18). Within two months of implantation, the device failed, causing Devore injury.[1] Id. ¶¶ 20, 21. Devore contends that both defendants: i) are strictly liable for her injuries due to the defective design and manufacture of the prosthesis; ii) breached both express and implied warranties regarding the safety and quality of the product; iii) breached their duty of care by the negligent design, manufacture, and provision of warnings regarding the product; and iv) deceptively and unlawfully induced Devore to purchase the defective prosthesis in violation of Florida's Deceptive Trade and Unfair Trade Practices Act ("FDUPTA"), Fla. Stat. §§ 501.201 *et seq*. Id. ¶¶ 27-66. While Devore does not assert that Orthopedic Solutions directly supplied the allegedly defective product to her, she contends that the company is a properly joined defendant due to its engagement in "the retailing, distributing, marketing, and/or supplying [of the subject medical device], either directly or indirectly, to members of the general public within the State of Florida, including [Devore]." Id. ¶ 5. The complaint alleges damages in excess of $15,000, the state court jurisdictional threshold.

On May 27, 2009, HOC served Devore with Damages Interrogatories asking her to admit or deny that the damages she sought would exceed the federal diversity jurisdiction

---

[1] According to Devore's complaint, a batch of Stryker Trident hip prostheses were recalled on March 13, 2006 after a U.S. Food and Drug Administration investigation identified "dimensional anomalies in the recalled components." Id. at ¶ 22.

2

threshold of $75,000.[2] Devore responded on June 26, 2009 that she could not deny that claimed damages would exceed $75,000 because she intended to seek "the maximum amount of compensation which the jury may award based on the facts of her case."[3] Id. On July 24, 2009, HOC and Orthopedic Solutions filed a notice of removal to this Court (Doc. 1), contending that federal jurisdiction is proper because i) Devore's responses to the interrogatories established that the amount in controversy is greater than $75,000, and ii) the presence of Orthopedic Solutions, as a fraudulently joined defendant, does not defeat diversity jurisdiction.

Regarding fraudulent joinder, defendants provided the affidavit of Gordon Ballard, Director of Distribution for HOC. (Doc. 1, Ex. 4). Ballard's affidavit identifies the particular Stryker Trident implanted in Devore's hip, and states that a review of the invoice and distribution documentation for the subject device "establishes conclusively that Orthopedic Solutions, Inc., d/b/a Stryker South Florida Agency did not participate in any way in the sale or distribution of the subject device." Id. ¶ 4. Ballard's statements are supplemented by exhibits purportedly tracking the subject device from HOC's Cork, Ireland manufacturing facility to its New Jersey headquarters, after which it was shipped directly to an HOC

---

[2]The Court notes that the more proper discovery device for this purpose might have been a Request for Admission.

[3]Devore provided this answer in response to Interrogatory No. 4, which asked: "Does plaintiff claim damages in this law suit do not exceed $75,000.00, exclusive of interest and costs?" Devore also answered "see Answer to Interrogatory No. 4" in response to Interrogatory No. 5, which asked: "Do you admit that plaintiff will not seek damages in this action in excess of $75,000.00, exclusive of interest and costs?" (Doc. 1, Ex. 3 at 5).

warehouse facility in Jacksonville, Florida.[4]  (Doc. 1, Ex. 4 ¶ 5).  From there, Ballard contends (and HOC provides documentation to support) that the subject device was sent to Flagler Hospital pursuant to a requisition request, where it was implanted in Devore's hip by her surgeon, Dr. James Grimes, on December 14, 2004.

On July 29, 2009, Devore moved to remand the case to state court, arguing that she had met her burden of demonstrating "even a possibility" of a valid claim against Orthopedic Solutions and that the defendants had failed to establish beyond "mere conclusory allegations" that the amount in controversy was greater than $75,000.  (Doc. 4 at 3, 10). Devore's motion offers no rebuttal to Ballard's affidavit or the documentation supporting it, other than to note that the Southern District of Florida had rejected defendants' attempted removal of a matter allegedly involving similar claims.[5]  Devore also restates her contention that Orthopedic Solutions was properly joined because the company was "involved extensively in the Stryker Trident's promotion, distribution, supply and sale throughout

---

[4]Attached to Ballard's affidavit are the following exhibits: i) a replenishment order history purporting to show shipment of the subject medical device from HOC's New Jersey facility to an HOC warehouse facility in Jacksonville, Florida designated as Warehouse A6 (Doc. 1, Ex. 4, Ex. A); ii) a shipment tracking report purporting to show shipment of the device from Warehouse A6 to Flagler Hospital, where Devore underwent her surgery; iii) an invoice from HOC to Flagler Hospital for the device with the comment "Dr. Grimes/PN: T.E.D./DOS: 12/14/04" (Doc. 1, Ex. 4, Ex. C); and HOC's order history for order number 640233, which corresponds to the order number listed on both the invoice and the shipment tracking report (Doc. 1, Ex. 5).

[5]In her motion to remand, Devore states: "On December 18, 2007, the Southern District of Florida remanded a nearly identical claim in *Hughes v. Howmedica et al.,* Case No. 07-61721-CIV-ZLOCH (S.D. Fla, Dec 18, 2007) based on finding that a proper claim was brought against [Orthopedic Solutions], a non-diverse party.  The Hughes claim has proceeded in Broward County, Florida." Id. at 2, n.2.

Florida and specifically related to the device ultimately sold and implanted into [Devore]." Id. at 8. As to the question of jurisdictional amount, Devore contends that defendants' only support for their argument that damages exceed $75,000 is a "misrepresentation of [Devore]'s responses to Interrogatories," as she "responded directly and by incorporation that she was unable to make such assertion but rather 'seeks the maximum amount of compensation which the jury may award based on the facts of her case.'" Id. at 3, 10.

On August 19, 2009, HOC and Orthopedic Solutions filed a response to Devore's motion, which proffers further documentation in support of removal. (Doc. 17). One such document is the affidavit of Rosemarie Morisco, HOC's Senior Director of Sales Operations/Finance (Doc. 17, Ex. D), in which Morisco stated that she had reviewed the exclusive agency agreements governing the relationship between HOC and Orthopedic Solutions, and that those documents "conclusively show[ ] that Orthopedic [Solutions] was not authorized to conduct business in or compensated for business generated in areas of Florida other than those listed in the agreements," with the listed territory being "limited to South Florida."[6] Id. ¶ 7. Further, Morisco stated that "[since 2002], the territory described as North Florida, including St. John's County specifically, was exclusively covered by [HOC] directly." Id. ¶ 8.

To rebut Devore's assertions regarding claimed damages, Defendants also provide

---

[6]Defendants supplemented Morisco's affidavit with several exhibits identifying the specific counties and hospitals which comprise Orthopedic Solutions' territory. Id., Ex. A-C. Neither Flagler Hospital nor St. John's County (where the hospital is located) are within Orthopedic Solutions' listed territory.

a presuit demand letter dated February 22, 2007 from Devore's counsel[7] to HOC. (Doc. 17, Ex. F). The letter estimates that a jury verdict in Devore's favor could be expected to approximate $646,009.66, comprised of: (1) Medial Bills (Past): $101,009.66[8]; (2) Intangible Damages (Past): $120,000; and (3) Intangible Damages (Future): $425,000. Id. at 5. The letter closes with the following: "[p]lease note that the above total does not include any amounts for the future medical expenses [Devore] is **certain** to incur for treatment of her **ongoing, permanent injuries**. A significant award of future medical expenses will likely drive [Devore]'s future intangible damages even higher!" Id. (emphasis in original).

## II. Discussion

### A. The Law of Fraudulent Joinder

A defendant may remove a civil case from state to federal court if the federal court has original jurisdiction. 28 U.S.C. § 1441(a). For a federal court to have original jurisdiction over a case alleging only state law claims, as here, there must be complete diversity and the threshold amount in controversy. 28 U.S.C. § 1332(a). To satisfy the diversity requirement for removal jurisdiction, "no defendant can be a citizen of the state in which the action was brought." Tillman v. R.J. Reynolds Tobacco, 253 F.3d 1302, 1305 (11th Cir. 2001)(citing 28 U.S.C. § 1441(b)).

The doctrine of fraudulent joinder provides an exception to this diversity of citizenship

---

[7]The demand letter appears to have been sent from different counsel than are currently representing Devore.

[8]The demand letter states that, as of February 22, 2007, Devore "ha[d] incurred medical expenses in excess of $101,009.66," as well as "additional medical expenses, the bills for which have been requested, but have not been obtained." Id. at 4, n.1.

6

requirement. Tran v. Waste Mgmt., Inc., 290 F.Supp.2d 1286, 1292 (M.D. Fla. 2003). A plaintiff cannot defeat removal to federal court by joining a non-diverse defendant with no true connection to the controversy. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Where a defendant is found to be fraudulently joined, its citizenship is not considered for the purposes of determining whether complete diversity exists. Henderson v. Washington Nat'l Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006).

The burden of proving fraudulent joinder rests on the removing party, Tran, 290 F.Supp.2d at 1293, and is a "heavy one." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380 (11th Cir. 1998). A defendant must show by clear and convincing evidence that "there is no possibility that the plaintiff can prove a cause of action against the resident defendant."[9] Henderson, 454 F.3d at 1281. "[T]he district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff.... The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)(internal citation omitted); see also Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005).

In resolving a claim of fraudulent joinder, the court will proceed in a fashion "similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)." Tran, 290 F.Supp.2d at 1293 (quoting Crowe, 113 F.3d at 1538). However, "as with a summary

---

[9]There are other ways to prove fraudulent joinder, see Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998), but none are relevant to this case.

judgment motion we resolve factual controversies in favor of the nonmoving party *only* when there is an actual controversy, that is, when *both* parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.*" Legg, 428 F.3d at 1323 (emphasis in original and internal citation omitted). In other words, "there must be some question of fact before the district court can resolve that fact in the plaintiff's favor." Id. "When the Defendants' affidavits are undisputed by the Plaintiff[ ], the court cannot then resolve facts in the Plaintiff['s] favor based solely on the unsupported allegations in the Plaintiff['s] complaint." Id.

In their notice of removal, HOC and Orthopedic Solutions present an affidavit, supported by documentary evidence, demonstrating that Orthopedic Solutions had no involvement in the sale or distribution of the medical device allegedly implanted in Devore. In her motion to remand, Devore ignores that issue entirely and instead attaches a series of exhibits supporting the fact that Orthopedic Solutions retails and distributes HOC products, including the Stryker Trident, within the state of Florida. That Orthopedic Solutions distributes HOC products in Florida, however, is not disputed by the defendants.[10] What

---

[10]Defendants do not, as Devore contends, claim that Orthopedic Solutions was not a retailer or distributor of HOC products. To the contrary, defendants state in their response: "[w]hile Orthopedic Solutions is in fact a distributor for HOC, Orthopedic Solutions' territory is strictly limited to South Florida" and "[t]he materials attached to [Devore]'s motion for remand support the point only that Orthopedic Solutions does business in *South Florida.* Defendants do not dispute this point." (Doc. 17 at 4, 11)(emphasis in original). The Court notes that HOC and Orthopedic Solutions apparently *did* argue that Orthopedic Solutions was not a retailer for HOC in Hughes v. Howmedica et al, No. 07-61721-CIV-ZLOCH (M.D.Fla. December 18, 2007), which was rebutted by the plaintiff in that action. (Doc. 4, Ex. A at 2). This has no relevance, however, to the question of whether joinder of

8

defendants *do* assert is that "Orthopedic Solutions was not involved in any way, shape, or form with the sale or distribution of [*Devore*]'s hip prosthesis."  (Doc. 17 at 8)(emphasis added).  Devore has provided no evidence to dispute this statement and the documentation supporting it, and rests solely upon the allegation that Orthopedic Solutions is liable because it has marketed and distributed the same <u>type</u> of product that injured her within the same state she purchased the product.

Devore's complaint contends that both defendants are liable on the grounds of strict liability defective design, manufacture, and failure to warn; breach of both express and implied warranties; negligent design, manufacture, and failure to warn; and FDUPTA. Despite this, neither Devore's complaint nor her motion to remand specifically allege that Orthopedic Solutions owed her any particular duty, was in privity with her, or made any representation to her whatsoever – necessary components of all but her strict liability claim. In an apparent concession of this fact, Devore's motion to remand addresses only the validity of her strict liability claim vis-a-vis Orthopedic Solutions.  As a result, since Devore has not contended that remand is proper on the basis of the remaining claims, the Court considers

---

Orthopedic Solutions is proper in this case, and Devore's reliance on Judge Zloch's order is therefore misplaced.  Even if any weight were given to the fact that HOC and Orthopedic Solutions were unsuccessful in their attempt to remove an unrelated case with disparate facts to federal court, the order (which Devore attaches as Exhibit A to her motion to remand) does not require a similar result here.  In ordering remand, Judge Zloch stated only that he could not find that Orthopedic Solutions did not distribute the product alleged to have injured the <u>Hughes</u> plaintiff based solely on one affidavit which had been directly contradicted by the plaintiff.  (Doc. 4, Ex. A at 3).  This is inapposite here, where defendants have provided ample documentary evidence to support the contention that Orthopedic Solutions was uninvolved in the sale or distribution of the subject hip prosthesis to Devore, and Devore has produced no evidence to the contrary.

only whether she has shown "even a possibility" of establishing a valid strict liability action against Orthopedic Solutions.

### 1. **Strict Liability**

Florida adopted the doctrine of strict liability, as stated in A.L.I. Restatement (Second) of Torts § 402A[11] (1965), in <u>West v. Caterpillar Tractor Co.</u>, 336 So.2d 80 (Fla. 1976). In <u>West</u>, the Florida Supreme Court held that "[i]n order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship *to the product in question.*" <u>West</u>, 336 So.2d at 87 (emphasis added). Florida courts have since expanded the doctrine beyond manufacturers of defective products "to others in the

---

[11] The Restatement definition provides:

(1) *One who sells any product in a defective condition* unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

A.L.I. Restatement (Second) of Torts § 402A (1965)(emphasis added).

Comment "(g)" to § 402A states: "[t]he rule stated in this Section applies only where the product is, *at the time it leaves the seller's hands*, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." <u>Id.</u> (emphasis added).

10

distributive chain including retailers, wholesalers, and distributors." Samuel Friedland Enter. v. Amaroso, 630 So.2d 1067, 1068 (Fla. 1994). The purpose behind such expansion "is that those entities *within a product's distributive chain* 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect.'" Id. (quoting North Miami General Hosp., Inc. v. Goldberg, 520 So.2d 650, 651 (Fla. 3d DCA 1988))(emphasis added, alteration in original).

It is therefore true, as Devore asserts, that a distributor or retailer is answerable in strict liability when it is within the distributive chain via which the allegedly defective product made its way from the manufacturer to the injured consumer or user. See Rivera v. Baby Trend, Inc., 914 So.2d 1102, 1104 (Fla. 4th DCA 2005). As a necessary precursor to stating a valid strict liability claim against a distributor or retailer, however, a plaintiff must establish that it has properly identified the defendant as actually being within the distributive chain of the product which caused injury. See id.; see also Siemens Energy & Automation, Inc. v. Medina, 719 So.2d 312, 315 (Fla. 3d DCA 1998)(finding that motion for directed verdict should have been granted because defendant acted as a "conduit of information" but did not serve as distributor or retailer for product that injured plaintiff, and thus was not part of the product's distributive chain); Mahl v. Dade Pipe and Plumbing Supply Co., Inc., 546 So.2d 740, 741 (Fla. 3d DCA 1989)(granting summary judgment in a products liability action where plaintiff "relied on faith and hope alone" and failed to present any evidence that defendants actually manufactured or supplied the allegedly defective product).

Regardless of the theory which liability is predicated upon, whether negligence,

> breach of warranty, strict liability in tort, or other grounds, *it is obvious* that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, *there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product.* Although the matter of identification is thus inherent in every products liability action, it becomes an issue in only a relatively small number of cases, *since the identity of the manufacturer or seller is usually well-known and not in dispute.*

Annot., *Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury,* 51 A.L.R 3d 1344 § 2(a) (1973)(emphasis added and footnotes omitted).

The Florida Standard Jury Instructions for Product Liability are clear on this point in that they presuppose a defendant's involvement with the defective product. The standard charge in a products liability action reads: "[t]he issues for your determination on the claim of (claimant) against (defendant) are whether the (describe product) *[sold] [supplied] by (defendant)* was defective *when it left the possession of (defendant)* and, if so, whether such defect was a legal cause of [loss] [injury] [or] [damage] sustained by (claimant or person for whose injury claim is made)." Florida Standard Jury Instructions, PL Product Liability (emphasis added). While Florida courts have found that a plaintiff need not prove the defendant was ever in physical possession, Devore must still establish that Orthopedic Solutions possessed some element of "control over the allegedly defective product." Rivera, 915 So.2d at 1104 (describing the following as queries relevant to the issue of defendant's control: "whether the person or entity placed the product in the stream of commerce, is in a position to control the risk of harm a product might cause once put into the stream of commerce, or either created or assumed the risk of harm for the defective product")(internal quotation and citation omitted).

It is undisputed that HOC was both the manufacturer and distributor from which

12

Flagler Hospital, Dr. Grimes, and ultimately, Devore, obtained the Stryker Trident that allegedly caused Devore's injury, and it is undisputed that Orthopedic Solutions was completely uninvolved with that particular device.[12] Since Devore has presented nothing to contradict the uncontroverted evidence that Orthopedic Solutions was not involved in any way in the sale or distribution of the hip prosthesis that allegedly caused her injury, she cannot establish a vital element of her strict liability claim – that Orthopedic Solutions was within the distributive chain for the product that injured her. As Orthopedic Solutions cannot otherwise be liable, Devore has failed to establish that her strict liability claim "is an arguable one under state law." Crowe, 113 F.3d at 1538. Since the Court is instructed by Legg that it may not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts," Legg, 428 F.3d at 1323 (internal citation and emphasis omitted), Devore has not established "even a possibility" of a valid claim against Orthopedic Solutions.

### B. Amount in Controversy

The sole remaining issue is whether the amount in controversy exceeds $75,000, the threshold for federal diversity jurisdiction. See 28 U.S.C. § 1332(a). For the purposes of this determination, the Court must "review the propriety of removal on the basis of the removing documents." Lowery v. Alabama Power Co., 483 F.3d 1184, 1211 (11th Cir. 2007). Where a plaintiff has not pleaded a specific amount in damages, the removing defendant bears the

---

[12] Presented with documentary evidence establishing these facts, Devore had no rebuttal other than to rest on her original allegation that Orthopedic Solutions is a properly joined defendant due to its engagement in "the retailing, distributing, marketing, and/or supplying [of the subject medical device], either directly or indirectly, to members of the general public within the State of Florida, including [Devore]." (Doc. 2 ¶ 5).

13

burden to show by a preponderance of the evidence that the amount in controversy meets the jurisdictional requirement. Id. at 1208-09; Miedema v. Maytag Corp., 450 F.3d 1322, 1326 (11th Cir. 2006).

In Lowery, the Eleventh Circuit addressed "how a district court must proceed in evaluating its jurisdiction after removal." Lowery, 483 F.3d at 1187. The Court found that, pursuant to 28 U.S.C. § 1446(b), a defendant may remove based on either the plaintiff's original pleading or "a copy of an amended pleading, motion, order, or other paper." Id. at 1212 (quoting 28 U.S.C. § 1446(b)). Regarding what constitutes "other paper," the Court noted that a number of documents have been judicially recognized as such, including interrogatory responses. Id. at 1213, n.61. The Court stated that a district court, "in assessing the propriety of removal, ...considers the document received by the defendant from the plaintiff – be it the initial complaint or a later received paper – and determines whether that document and the notice of removal unambiguously establish federal jurisdiction." Id. at 1213. The Court concluded that "[i]f the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction." Id. at 1211.

Defendants, as required by 28 U.S.C. § 1446(b), filed their notice of removal within thirty days of receiving Devore's responses to the damages interrogatories, which did not deny that she sought damages greater than $75,000.[13] Devore contends that her equivocal

---

[13]Devore's responses did not *admit* this fact, either. However, if Devore were sincere in her contention that the amount in controversy is not met, she could "have submitted affidavits admitting the claim was less than the jurisdictional amount if that is what the motion to remand was meant to accomplish." Morock v. Chautauqua Airlines, Inc., No. 8:07-CV-

14

responses to the interrogatories do not create the necessary clarity required to support removal under Lowery. It is true that Devore's refusal to stipulate the actual amount of damages sought does not, standing alone, support jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1320 (11th Cir. 2001). However, this Court has stated that a plaintiff's "'refusal to stipulate or admit that she is not seeking damages in excess of the requisite amount' should be considered" when assessing the amount in controversy. Morock, 2007 WL 1725232 at *2 (quoting Hanna v. Miller, 163 F.Supp.2d 1302, 1306 (D.N.M. 2001)). Further, Lowery does not so handcuff a district court that it may not find jurisdiction where a plaintiff purposefully refuses to acknowledge that she is seeking the requisite damages. See Roe v. Michelin North America, Inc., — F.Supp.2d —, 2009 WL 2232207, at *3 (M.D. Ala. July 28, 2009)(wrongful death action in which the court stated that "[n]othing in Lowery says a district court must suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount"; "[w]hile it would be speculative to specify the exact dollar amount at issue in this case, it is not speculative to conclude... that the amount, whatever it is, far exceeds $75,000").

While Devore's is not a wrongful death action as in Roe, it is a products liability action in which she claims to have suffered significant injuries – injuries severe enough for her to have amassed over $100,000 in medical bills (with several yet to be tallied) according to her

---

210-T17MAP, 2007 WL 1725232, at *2 (M.D. Fla. June 14, 2007)(citing Steele v. Underwriters Adjusting Co., Inc., 649 F.Supp. 1414, 1415 (M.D. Ala. 1986)). It appears that Devore "crafted [her] unclear, equivocal responses in a manner intended to circumvent the federal forum." Id. The Court does not countenance such gamesmanship.

presuit demand letter of February 22, 2007.[14]  Although this Court has held that presuit demand letters are not "other paper" based on the plain language of 28 U.S.C. 1446(b), Depina v. Iron Mountain Info. Mgmt., Inc., 2005 WL 1319231, at *1 (M.D. Fla. June 1, 2005), and therefore cannot be relied on by defendants as the sole basis for removal, the letter serves to supplement Devore's deliberately equivocal interrogatory responses as "proof that [Devore]'s prayer is grossly inconsistent with her alleged damages."  Burns v. Windsor Ins. Co., 31 F.3d 1092, 1097 (11th Cir. 1994).  Such evidence can persuade the court that the demand letter was "an honest assessment of damages."  See Golden v. Dodge-Markham Co., Inc., 1 F.Supp.2d 1360, 1364-65 (M.D. Fla. 1998).

Ignoring completely the past and future "intangible damage" amounts of $120,000 and $425,000, that Devore's past medical expenses are stated so specifically makes this demand letter distinguishable from one which is "too cryptic to be considered anymore [sic] than 'posturing by counsel seeking to stake out a position for settlement purposes.'"  Id. at 1365 (quoting Sfrakis v. Allstate Ins. Co., 1991 WL 147482, at *3 (E.D. Pa. July 24, 1991)).  Unless the Court were to "suspend reality," it is hard to imagine that Devore would not, at the very least, seek to recover her past medical expenses in an action alleging that a defective product caused her injuries.  Combining the interrogatory responses with the demand letter (and adding a dose of common sense), the Court is persuaded that defendants have met their burden of showing by a preponderance of the evidence that amount in controversy has been met.

---

[14]Thus, based on this objective measure of past medical expenses alone, plaintiff's case exceeds the jurisdictional amount.

16

**Conclusion**

Having found fraudulent joinder, Orthopedic Solutions will be dismissed as a defendant from this case.[15] Without the inclusion of Orthopedic Solutions, the parties are diverse. Having also found that the amount in controversy is met, this Court has diversity jurisdiction over this case, and remand is therefore inappropriate.

Accordingly, it is hereby

**ORDERED**:

1. Plaintiff's Motion to Remand (Doc. 4) is **DENIED**.

2. Defendant Orthopedic Solutions, Inc. is dismissed from this action without prejudice. Defendant Orthopedic Solutions, Inc.'s Motion to Dismiss (Doc. 12) is terminated as moot.

3. Plaintiff's Motion to Stay Briefing on All Pending Motions (Doc. 7) is terminated as moot. Plaintiff shall have until October 19, 2009 to respond to Defendant Howmedica

---

[15]Having found Orthopedic Solutions was fraudulently joined, dismissal of the claims against it is appropriate. Accordino v. Wal-Mart Stores East, L.P., No. 3:05-CV-761/MCR, 2005 WL 3336503, at *6 (M.D. Fla. Dec. 8, 2005); see also Smith v. Amoco Corp., No. 04-60343, 2004 WL 2008945, at *2 (5th Cir. Sept. 9, 2004)(finding that the district court committed no error in dismissing a fraudulently joined defendant from the plaintiff's personal injury action); Fowler v. Wyeth, No. 3:04-CV-83/MCR, 2005 WL 2893515, at *4 (N.D. Fla. May 14, 2005) (dismissing all claims against fraudulently joined defendants); TKI, Inc. v. Nichols Research Corp., 191 F.Supp.2d 1307, 1316 (M.D. Ala. 2002)(dismissing a fraudulently joined defendant as a party to the case); Fed.R.Civ.P. 21 (stating that in the case of party misjoinder, "[p]arties may be dropped ... by order of the court ... of its own initiative at any stage of the action and on such terms that are just."); Newman-Greene, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 832, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989)("[I]t is well settled that Rule 21 invests district courts with the authority to allow a dispensable nondiverse party to be dropped at any time.").

Osteonics Corporation's Motion to Dismiss (Doc. 10).

    4. The parties should file a Case Management Report no later than October 19, 2009.

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of September, 2009.

                                                TIMOTHY J. CORRIGAN
                                                 United States District Judge

jmm.
Copies:

counsel of record